IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 23-99** |
| | : | |
| **v.** | : | |
| | : | |
| **TYQUAN ATKINSON** | : | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### *Findings of Fact*

**NOW**, this 2nd day of August, 2023, after a suppression hearing at which I had the opportunity to observe the demeanor of the witnesses and to evaluate their credibility, I make the following findings of fact:

1. On February 20, 2023, at 8:15 p.m., Philadelphia Police Officers Robert Vasquez and Mark Rothman were in their marked police vehicle at the intersection of 53rd and Springfield Streets, Philadelphia, Pennsylvania.

2. As they were stopped on Springfield Street, they observed a vehicle proceed through the intersection against a red traffic signal.

3. Having observed the traffic violation, the officers pursued the vehicle, stopping it in the 1600 block of South 53rd Street.

4. The stop occurred in a high crime area.

5. At the time they stopped the vehicle, the officers were aware that within a three-to-four-block radius of the 1600 block of South 53rd Street, there had been drive-by shootings, drug trafficking, and a shooting of a police officer during the previous two weeks, heightening their concerns for their safety.

6. There were two occupants in the stopped vehicle.

7.     Vasquez approached the driver's side and requested the driver's license, registration, and proof of insurance.

8.     Rothman remained on the passenger side of the vehicle while Vasquez returned to the police vehicle.

9.     Rothman was aware that there was gang activity in the area, heavy drug dealing, innumerable shootings, carjackings and homicides.

10.    Rothman observed the defendant was breathing heavily and his hands were shaking while he was attempting to get identification from his pocket.

11.    Rothman saw a gray backpack between the passenger's legs on the floor of the vehicle.

12.    To mitigate any danger, Rothman asked the defendant to step out of the vehicle.

13.    While the defendant was getting out, he dropped his keys and conceded he was "very nervous."

14.    Rothman could see that the defendant had no firearm on him once he was out of the vehicle.

15.    Rothman and the defendant went to the rear of the vehicle.

16.    When Rothman asked the defendant whether there was anything in the backpack, the defendant replied there was a prayer rug and he denied having anything else in it.

17.    The defendant refused Rothman's request for consent to search the backpack.

18. The defendant's response to Rothman's request, unlike his earlier responses, was abrupt and emphatic.

19. Rothman believed his "safety was in danger because there was a firearm in [the defendant's] immediate area and the answer to the question of the backpack and all the stuff leading up to that led [him] to go to the backpack."

20. When Rothman started to walk to get the backpack, the defendant started to follow him.

21. Rothman removed the backpack and put it on top of the vehicle.

22. As he removed the backpack, Rothman patted the backpack between his palms to assure himself that there was no weapon in it.

23. When he felt the backpack, Rothman sensed a gun and an extended magazine.

24. When he placed the backpack on the vehicle, it made the sound of a heavy object hitting the vehicle.

25. Rothman instructed Vasquez to cuff the defendant who then ran from the scene before Vasquez could restrain him.

26. The driver of the vehicle sped off with the backpack on the roof.

27. During the flight, the backpack fell and Rothman recovered it.

28. The defendant was later apprehended in the 5300 block of Greenway Street.

29. After the defendant was returned to the scene, Rothman opened the backpack, discovering a 9mm. ghost gun and an extended magazine.

## CONCLUSIONS OF LAW

1. The police may stop a vehicle when they have probable cause to believe a traffic violation has occurred. *United States v. Hurtt*, 31 F.4th 152, 158 (3d Cir. 2022) (citing *Whren v. United States*, 517 U.S. 806, 810 (1996)).

2. Disregarding a red traffic signal is a violation of the Pennsylvania Motor Vehicle Code, 75 Pa. Cons. Stat. § 3112.

3. "After a traffic stop that was justified at its inception, an officer who develops a reasonable, articulable suspicion of criminal activity may expand the scope of an inquiry beyond a reason for the stop and detain the vehicle and its occupants for further investigation." *United States v. Givan*, 320 F.3d 452, 458 (3d Cir. 2003) (citation omitted).

4. "[A] traffic stop's mission is to address the traffic violation that warranted the stop and attend to related safety concerns." *United States v. Clark*, 902 F.3d 404, 409-10 (3d Cir. 2018) (quoting *Rodriguez v. United States*, 575 U.S. 348, 353 (2015)). Particularly in a traffic stop, officer safety is a "legitimate and weighty" concern. *Rodriguez v. United States*, 575 U.S. 348, 356 (2015) (quoting *Pennsylvania v. Mimms*, 434 U.S. 106, 110-11 (1977)).

5. Police may conduct a *Terry* frisk of the interior of the vehicle limited to the areas where a weapon may be hidden so long as the officer has a reasonable belief based on specific, articulable facts that the occupant is dangerous and has a weapon inside. *United States v. Davis*, 726 F.3d 434, 439 (3d Cir. 2013) (citing *Michigan v. Long*, 463 U.S. 1032, 1049–50 (1983)).

6. The officer's concern for his safety must be objectively reasonable but need not be absolutely certain. *United States v. Kithcart*, 218 F.3d 213, 219 (3d Cir. 2000) (citing *United States v. Moorefield*, 111 F.3d 10, 13-14 (3d Cir. 1997)).

7.  Police may search a vehicle's occupants and search the passenger compartment if they have reasonable suspicion that the occupants might be armed and dangerous.  *Michigan v. Long*, 463 U.S. 1032, 1049-50 (1983).

8.  "Flight from a non-consensual, legitimate traffic stop (in which the officers are authorized to exert superintendence and control of the occupants of the car) gives rise to reasonable suspicion."  *United States v. Bonner*, 363 F.3d 213, 218 (3d Cir. 2004).

9.  Rothman reasonably believed that the defendant could access a weapon that may have been in the backpack when he returned to the vehicle.

10.  The totality of the circumstances – including the stop in a high-crime area during nighttime, the defendant's emphatic reaction to Rothman's request to look inside the backpack, the defendant's nervousness, his heavy breathing, his shaking hands, dropping his keys, his having claimed the backpack contained only a prayer rug, coupled with the heavy metal sound when the backpack was placed on the car – gave Rothman reasonable suspicion to "pat down" the backpack and subsequently open it.  *See United States v. Brown*, 448 F.3d 239, 251 (3d Cir. 2006).

_____
TIMOTHY J. SAVAGE, J.